[No. 14084. Department One. August 29, 1917.]

# W. E. HANSON, as State Bank Examiner, Appellant, v. NORTHERN BANK & TRUST COMPANY, Respondent.[1]

BANKS AND BANKING—DEPOSITS—EVIDENCE—SUFFICIENCY. A deposit by the N. bank in the S. bank, and the relation of debtor and creditor, is not shown by evidence that, in negotiating for the credit, officers of the S. bank signed two notes for $15,000, one of which was left with the N. bank, with collateral, under an agreement that the other note should be signed by other officers and sent to the N. bank, which was to hold the notes and collateral as security for a credit of $15,000, that such other note was not signed and returned and no credit slip was issued at that time nor afterwards when drafts were drawn therefor and payment refused by the N. bank, and the S. bank made no complaint when the drafts were refused.

SAME—DEPOSITS—OFFSET OF NOTE—LIABILITY ON NOTE OF TRUSTEES. Where a note was given by trustees of a bank for and on its behalf as security for a deposit in another bank, the latter may, on insolvency of the former, offset the note, if past due, against the deposit; since the insolvent was liable on such note, though not given in its name.

Appeal from a judgment of the superior court for King county, Smith, J., entered November 10, 1916, upon granting a nonsuit, dismissing an action for money received. Affirmed.

*M. M. Richardson* and *Hugh C. Todd* (*Samuel E. Kenney*, of counsel), for appellant.

*Corwin S. Shank* and *H. C. Belt*, for respondent.

MAIN, J.—This action was brought by the plaintiff, as state bank examiner, for and in behalf of the First International Bank, an insolvent banking corporation, against the Northern Bank & Trust Company, for the purpose of recovering the sum of $15,000, claimed to have been deposited by the insolvent bank with that bank. After the issues were framed, the cause came on for trial before the court sit-

[1]Reported in 167 Pac. 97.

ting without a jury. At the conclusion of the plaintiff's evidence, the defendant challenged the sufficiency thereof to sustain a judgment against it, and moved the court to dismiss the action. This motion was sustained and a judgment of dismissal entered, from which the plaintiff appeals.

The facts are substantially as follows: During the month of June, 1915, and for some time prior thereto, the First International Bank had been engaged in business at South Bend, Washington. The cashier and managing officer of this bank was one Elias Pierson. The Northern Bank & Trust Company was engaged in business at Seattle. The managing officer of this bank was W. L. Collier. On June 26th, in the year mentioned, the reserve in the South Bend bank being somewhat depleted, Pierson indorsed, without recourse, notes which that bank held of its customers to the extent of approximately $21,000, and forwarded them to the Northern Bank & Trust Company with the request that the latter bank take the notes and give credit for them as a deposit. This request, however, was not acceded to. Thereafter one or more long-distance telephone conversations took place between Pierson and Collier. On July 8th, Pierson went to Seattle for the purpose of seeing Collier and making some arrangement by which the Northern Bank & Trust Company would extend to the South Bend bank a credit at least in the sum of $15,000. As a result of this interview, and late in the afternoon of the same day, Pierson and J. A. Soderberg signed two notes, each due one day after date, and each for the sum of $15,000. One of these notes was left with Collier. The other was taken by Pierson for the purpose of securing the signatures of the other trustees of the South Bend bank, the understanding apparently being that, if the trustees of the South Bend bank would sign individually a note for the sum of $15,000, and deposit as collateral $15,000 worth of the notes previously sent, credit would be extended. Of the notes which had been sent on the 26th, Pierson took back to the South Bend bank all above the amount of $15,000. The

note which Pierson took to secure the signatures of the other trustees of the bank was not signed by them, nor was it at any time returned to the Northern Bank & Trust Company. No credit memorandum was issued by Collier, for the Northern Bank & Trust Company, for the note that was left with him. Neither was any book entry in that bank made showing a deposit. The matter stood in this form until the 17th day of July, 1915, when the South Bend bank suspended business and went into the hands of the state bank examiner.

The first question presented is whether the transaction between Pierson, representing the South Bend bank, and Collier, representing the Northern Bank & Trust Company, of July 8, created the relation of debtor and creditor between the two banks. Collier did not testify, and the effect to be given to this transaction must be largely determined from Pierson's testimony, from which it appears that, on the day following the transaction of July 8, the Northern Bank & Trust Company, in Pierson's presence, refused to cash a draft which had been drawn upon it in favor of the South Bend bank; that Pierson then made no protest against this action of the Northern Bank & Trust Company, or claim that the South Band bank then had on deposit the sum of $15,000; and that a few days later other drafts were drawn upon the Northern Bank & Trust Company by or in favor of the South Bend bank, which were refused, and no complaint was made by Pierson of this action. In addition to this, as already recited, the transaction of July 8 took place after the close of banking hours, and no credit memorandum or other evidence of the deposit was issued or made by the Northern Bank & Trust Company. Against these facts, is the testimony of Pierson on direct examination, which would seem to sustain the position that a deposit had been made, and the further fact that one of the $15,000 notes was left with Collier. The exact reason why the two notes for $15,000 each were signed by Pierson and Soderberg and one of them left with Collier is not clear from the record. The

trial court, after hearing the testimony, was evidently of the opinion that the evidence would not sustain a finding that the transaction between Pierson and Collier on July 8 created the relation of debtor and creditor between the two banks, and this conclusion is doubtless correct. But however this may be, there is another reason why the appellant cannot prevail in this case. Pierson and Soderberg, in signing the $15,000 notes, were acting for and in behalf of the South Bend bank. This is made clear by Pierson's testimony as it appears in the record, as follows:

"Q. And you and Mr. Soderberg were endeavoring to help out the bank there [South Bend bank]? A. Yes, sir, we were. Q. And what you were doing was for and on behalf of the bank? A. Yes, it was. Q. And you regarded it as a bank transaction and for its benefit? A. Yes, sir."

Assuming that the transaction between Pierson and Collier created a deposit in the Northern Bank & Trust Company in favor of the South Bend bank in the sum of $15,000, the appellant here cannot recover, because, if the transaction was for or on behalf of the South Bend bank, the Northern Bank & Trust Company would have the legal right to offset the amount of the deposit against the $15,000 due it upon the note signed by Pierson and Soderberg. A bank is responsible for a loan secured for it by an officer acting within the scope of his authority, even though the note evidencing such loan is signed by the officer personally. 7 C. J. 559; *Cherry v. City Nat. Bank*, 144 Fed. 587; *Rankin v. City Nat. Bank*, 208 U. S. 541.

The note of Pierson and Soderberg being given for and on behalf of the South Bend bank, that bank was liable upon the note, even though it was signed by the trustees and not by the bank. The note being past due when the present action was instituted, the Northern Bank & Trust Company had a right to offset the $15,000 deposit, assuming such deposit to have been made, against the $15,000 due it on the note.

*Fishburne v. Merchants Bank of Port Townsend,* 42 Wash. 473, 85 Pac. 38.

It follows, therefore, that whatever view may be taken of the effect of the testimony as showing the relations between the banks, the appellant in this case is not entitled to recover.

The judgment will be affirmed.

ELLIS, C. J., MORRIS, CHADWICK, and WEBSTER, JJ., concur. .